# COUNTY OF ST. CLAIR

## v.

## JACOB BOLLMAN.

1. CORONER'S INQUEST—JUROR'S FEES.—A jury was summoned by the coroner to hold an inquest over twenty-six bodies burned in a convent. The jury was not sworn as to each dead body, but was sworn three times, on the theory that there were three classes, the identified burned bodies, the unidentified burned bodies, and the bodies of two persons killed by jumping from a window. The jury returned twenty-seven verdicts—a general verdict as to the immediate cause of the catastrophe, and a separate verdict as to each of its victims. The inquest lasted six days. *Held*, that the compensation of each juror should be six dollars.

2. CONSTRUCTION OF STATUTE.—The salient and controlling words in the forty-fifth section of the Fees and Salaries Act, "the fee of each juror attending an inquest held over a dead body shall be $1 per day," are "an inquest," and the true intent and meaning is, that each juror attending *an inquest* shall be paid a *per diem* of $1, regardless of the fact whether that particular inquest or inquiry is upon the body of one or many. The words "held over a dead body," are merely explanatory and for the purpose of indicating the kind of inquest covered by the statute.

APPEAL from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding. Opinion filed October 10, 1884.

Mr. R. D. W. HOLDER, for appellant; cited People v. Canal Com'rs, 3 Scam. 152; Zarresseller v. People, 17 Ill. 101;

Wright v. People, 101 Ill. 126; 1 Kent's Com. 461; People v. Hoffman, 97 Ill. 234; Perry Co. v. Jefferson Co., 94 Ill. 214; Walker v. City of Springfield, 94 Ill. 364.

Messrs. HAY & KNISPEL, for appellee; cited R. S. Ch. 31, §§ 10, 13, 14, 19; Ch. 53, §§ 26, 45.

As to construction of a statute: U. S. v. Morse, 3 Story, 87; Perteet v. People, 65 Ill. 230; Biggs v. Clapp, 74 Ill. 335.

BAKER, J. The Institute of the Immaculate Conception, in the city of Belleville, Illinois, was totally consumed by fire on the night of the 5th of January, 1884. Twenty-four of the inmates were burned to death, and two died from injuries received by throwing themselves from the windows of the third story of the building. Seventeen bodies were identified, and nine bodies were so entirely consumed that they could not be identified. A jury was summoned by the coroner and it held daily session for six days.

The jury was not sworn as to each dead body, but, it would seem, was sworn three times, on the theory there were three classes of dead bodies, the identified burned victims, the unidentified dead victims and the two persons killed while attempting to escape from the building. There was one inquest, continuing six days, over the twenty-six dead bodies.

The jury returned twenty-seven verdicts—a general verdict as to the immediate cause of the catastrophe and loss of life, and a separate verdict as to each of the victims. The general verdict begins with the recital: "We, the jury, impaneled to hold an inquest over the bodies of the victims of the fire at the Institute of the Immaculate Conception, in Belleville, Illinois, on the night of January 5, 1884, etc."

The question at issue is whether appellee, who was a member of the coroner's jury, is entitled to compensation from the county, at one dollar per day for six days, without reference to the number of the dead bodies, or should receive $156 for six days' services, on the theory that in contemplation of law he was engaged on the inquiry six days on each several body.

The determination of the question depends upon the con-

County of St. Clair v. Bollman.

struction to be given the forty-fifth section of the Fees and Salaries Act; which section reads as follows: "The fee of each juror attending an inquest held over a dead body shall be one dollar per day, payable out of the county treasury."

The first section of chapter 131, R. S., provides that in the construction of statutes all general provisions, terms, phrases and expressions shall be liberally construed, in order that the true intent and meaning of the legislature may be fully carried out, and that words importing the singular number may extend and be applied to several persons or things.

It is one of the canons of construction, that the real intention of the legislature, when actually ascertained, will prevail; and that for the purposes of such ascertainment, the whole of the statute, the law existing prior to its passage and the mischief to be remedied, will be considered. It is also a rule that such construction will be avoided as would lead to palpable injustice and absurdity. The section in force prior to the Fees and Salaries Act of 1872 provided that the fee of each juror attending an inquest held over a dead body, should be twenty-five cents, payable out of the county treasury. Gross Stat. 1869, Ch. 58, Sec. 22. The act of 1872 made provision for the payment of jurors in courts of record and before justices of the peace at certain fixed rates per day, and amended the section respecting the fees of coroners' jurors by substituting the words "one dollar per day" for the words "twenty-five cents." Under the old statute, if the service had lasted for weeks, the compensation for the whole time would only have amounted to twenty-five cents. We think it clear the intention was not only to remedy this evil, but as far as practicable to apply the principle of a *per diem* compensation alike to jurors of all kinds. The interpretation claimed by appellee would, necessarily, lead to absurd and unjust consequences. In the case before us, had there been but one victim, appellee would have received one dollar a day, but there being twenty-six victims he claims twenty-six dollars per day, and had there been a hundred victims, would have claimed a hundred dollars per day. In such latter case, which is not at all an improbable or impossible one, from the burn-

ing of a theater or other place of public resort, the cost to the county of a six days' inquest by a jury of six men, would amount to the sum of $3,600 for jurors' fees alone.

The language of the statute is: "The fee of each juror attending an inquest held over a dead body shall be $1.00 per day." The salient and controlling words are "an inquest," and the true intent and meaning is that each juror attending *an inquest* shall be paid a *per diem* of one dollar, regardless of the fact whether that particular inquest or inquiry is upon the body of one or many; the words "held over a dead body," are merely explanatory, and for the purpose of indicating the kind of inquest covered by the statute; and had the words of the section been "attending a coroner's inquest," the meaning of the statute would not have been otherwise than it now is. Statutes must be interpreted according to their intent and meaning, and not always according to the letter.

A thing within the intention is within the statute, though not within the letter, and a thing within the letter is not within the statute unless within the intention. As we have seen, the legislature itself, in laying down rules for the interpretation of the statutes, expressly provides that words importing the singular number may extend and be applied to several persons or things; and in the section under consideration, the words "an inquest held over a dead body," should be extended and applied to the case of a single inquest held over a number of dead bodies.

We are of opinion the allowance of $156 to appellee was in violation of the rules of construction prescribed in our statute and of the generally received canons of interpretation.

The judgment is reversed and the cause remanded.

Reversed and remanded.